OPINION OF THE COURT
Vincent E. Doyle, J.
This matter came before this court by an order to show cause signed by the Honorable Norman J. Wolf and granted on January 8,1982. The petitioner seeks an order: (1) voiding the grant by the New York State Department of Environmental Conservation (DEC) of a permit to respondent, Chaffee Landfill, Inc. (Chaffee), to operate a solid waste management facility in the Town of Sardinia which was issued on November 5, 1981; (2) voiding DEC’s grant of a variance to that permit issued on November 31, 1981; and (3) enjoining the disposal of any Buffalo Sewer Authority (BSA) sewer sludge cake at the landfill until such time as a proper permit and variance is issued.
Turning first to the first affirmative defense raised by Chaffee in its answer, this court must consider whether the petitioner is the real party in interest and whether he has standing to commence this proceeding. Generally, a party pleading a defense has the burden of proving it (Moncel *642 Realty Corp. v Whitestone Farms, 188 Misc 431, 433, affd 272 App Div 899; see, also, 3 Weinstein-Korn-Miller, NY Civ Prac, par 3018.14). Chaffee, while citing the Town Law (§ 65) as authority to support its first affirmative defense, has failed to submit any proof showing that the petitioner brings this proceeding without a direction from the Town Board of the Town of Sardinia. Nor Has Chaffee shown that the petitioner individually lacks standing to bring this proceeding. This court therefore holds the petitioner is a proper party and has standing".
Chaffee’s third affirmative defense is that this proceeding is barred by CPLR 217. CPLR 217 requires a proceeding against a body or officer to be commenced within four months after the determination to be reviewed becomes final. Since the instant proceeding was commenced well within four months after the issuance of both the permit and variance, this court finds Chaffee’s third affirmative defense to be without merit.
Chaffee also raises the defense of loches in its answer. A permit to construct a solid waste management facility in the Town of Sardinia was issued to Chaffee on July 28, 1981. Chaffee claims that the then Supervisor of the Town of Sardinia and the Town of Sardinia’s Town Board had notice of the issuance of the construction permit and were aware that upon compliance with the conditions of the construction permit, an operation permit would be granted. Hence, it argues that because the petitioner’s predecessor in office and the town board failed to begin this proceeding shortly after the issuance of the construction permit on July 28, 1981, and prior to the expenditure of large sums of money necessary to comply with the conditions of the construction permit, the petitioner should be barred from maintaining this proceeding.
Generally, the defense of loches is available to a defendant if the plaintiff has unreasonably delayed in bringing the proceeding and the delay has caused prejudice to the defendant. In this case, the petitioner’s predecessor in office and the town board apparently did register on July 22, 1981, through their attorney, at least one complaint with DEC about Chaffee’s application for a permit to construct and to operate. The respondents therefore have *643 been aware of the town’s disapproval of the operation permit since July, 1981. The petitioner does not now urge that the solid waste management facility be permanently closed or that the landfill should be forever prohibited from accepting BSA sewer sludge cake, but instead urges that Chaffee was required to follow certain procedures when it sought an operation permit and variance, and should be made to follow those procedures in the future.
Moreover, in light of the serious question concerning the protection of the environment that this case presents, and in light of DEC’s continuing obligation to obey statutory directives, regardless of whether it is faced with a lawsuit, this court is compelled to dismiss Chaffee’s defense of laches (accord City of Davis v Coleman, 521 F2d 661, 673; Steubing v Brinegar, 511 F2d 489).
This court will next examine the petitioner’s contentions. His first claim is that DEC lacked authority to grant the operation permit dated November 5, 1981 because Chaffee had not submitted a complete application (see 6 NYCRR 360.3 [b] [1]). Section 360.3 (b) (2) mandates that every application include a “contingency plan setting forth in detail the applicant’s proposal for corrective or remedial action to be taken in the event of equipment breakdowns, ground or surface water or air contamination attributable to the facility’s operation, fires, explosions and spills or releases of hazardous or toxic materials.” Petitioner claims that such a contingency plan is missing from the permit application file of Chaffee Landfill at the DEC. Respondents Flacke and Spagnoli assert that the necessary contingency plans are set forth in the engineering report submitted by Chaffee as part of its permit application.
The incorporation of contingency plans within the engineering report, however, does not fulfill the regulation’s clear requirement nor does it promote the policy reasons behind the regulation. By scattering the so-called plans throughout the engineering report, under various titles, Chaffee has made them less than accessible for consultation by persons in charge during an emergency and less than accessible for review and possible constructive criticism by DEC and the public.
*644 Accordingly, this court holds that the DEC acted without authority when it issued the operation permit to Chaffee before Chaffee had submitted an application complete with a contingency plan.
Petitioner also takes issue with DEC’s failure to consider the environmental impact of permitting Chaffee to operate the landfill as required under ECL article 8 (commonly known as the State Environmental Quality Review Act or SEQRA) and as required under 6 NYCRR Part 617. Respondents Flacke and Spagnoli urge that Chaffee’s operation permit was excluded from SEQRA’s application because of the approval of the landfill in 1958 by the Erie County Department of Health.
ECL 8-0111 (subd 5) excludes actions undertaken or approved prior to the effective date of article 8 from the required preparation of an environmental impact statement (ECL 8-0109, subd 2). “Actions” are defined to include, inter alia: “(i) * * * projects or activities involving the issuance to a person of a leáse, permit, license, certificate or other entitlement for use or permission to act by one or more agencies.” (ECL 8-0105, subd 4.) SEQRA or ECL article 8 was made effective September 1, 1976.*
Here, .the complained of actions are DEC’s issuance of an operation permit and a variance to Chaffee — not the 1958 Erie County Department of Health permit. Thus, both instant actions took place well after the effective date of SEQRA.
DEC’s citation to section 3 of chapter 460 of the Laws of 1978 (amdg L 1977, ch 252, § 14, subd [c]) is inapposite. The disputed 1981 operation permit falls within subdivision 3, not subdivision 4, of ECL 8-0117. Furthermore, chapter 252 of the Laws of 1977 (§ 11, subd [c]) also does not apply because: (1) the 1958 permit was issued to an operator of the landfill other than Chaffee and had an expiration date of December 31, 1958; (2) the nature and size of the landfill site was substantially different in 1981 than it had been in 1958; and (3) the granting of the *645 operation permit for the solid waste management facility at the landfill did not occur until after September 1,1977.
Accordingly, this court holds that DEC should have applied the procedural requirements of SEQRA and the corresponding regulations set forth in 6 NYCRR Part 617 to Chaffee’s request for an operation permit, and further that DEC’s failure to require the preparation of an environmental impact statement or, instead, to file a negative declaration before issuing an operation permit was violative of DEC’s statutory duty.
The petitioner, through his attorney, stipulated at oral argument to the withdrawal of his contention that DEC violated the notice requirements with regard to the permit. This court, as a result, does not reach that issue.
The petitioner also argues that the DEC acted without authority when it granted Chaffee a variance from the November 5, 1981 permit. First, he insists that DEC ignored the mandates of SEQRA with respect to the granting of the variance just as it had done with respect to the granting of the operation permit. Second, the petitioner asserts that neither he nor any other Town of Sardinia resident was notified that a variance to Chaffee’s operation permit was under consideration by the DEC and, therefore, that the town and its citizens were denied the right to review the application and to provide input as guaranteed by ECL article 70 and. the corresponding regulations set forth in 6 NYCRR Part 621. Finally, he contends that the variance application was inadequate under 6 NYCRR 360.1 (e) (2).
Respondents Flacke and Spagnoli debate the applicability of SEQRA with respect to the November 31, 1981 variance. They contend that the variance is an “exempt action” as that phrase is defined in 6 NYCRR 617.2 (n) (6). While it does not appear to this court that authority exists in SEQRA for the commissioner’s promulgation of the exemption provisions contained in section 617.2, even assuming that such authority does exist, section 617.2 (n) (6) is not pertinent here. It exempts only those actions “which are immediately necessary on a limited emergency basis for the protection or preservation of life, health, property or *646 natural resources”. The respondents have failed to show that the variance was immediately necessary on a limited emergency basis. A variance permitting the disposal of 200,000 pounds of sludge (with less than the required solids content) per day, six days per week, for a period of four months cannot be considered limited.
With respect to the petitioner’s second argument, the respondents take the position that while 6 NYCRR 360.1 (e) sets forth specific procedures for the granting of a variance, ECL article 70 (also known as the Uniform Procedures Act) does not apply.
The purpose of the Uniform Procedures Act (hereinafter UPA) is “to establish uniform review procedures for major regulatory programs 'of the department and to establish time periods for department action on permits under such programs” (ECL 70-0101). DEC’s regulatory program for the collection, treatment and disposal of refuse and other solid waste is one of those programs subject to the UPA (ECL 70-0107, subd 3, par [Z]). Consequently, the issue presented is whether or not a variance is part of the “permit” process.
ECL 70-0105 (subd 4) defines a “permit” to mean: “any permit, certificate, license or other form of department approval, modification, suspension, revocation, renewal, reissuance or recertification issued in connection with any regulatory program referred to in subdivision three of section 70-0107 of this article as further specified by rule and regulation” (emphasis added). Clearly, a variance is an “other form of departmental approval.” Additionally, a decision to grant a variance is a discretionary act which may have substantial and significant negative environmental impacts. The Legislature’s choice of language shows an obvious intent that such types of decisions be reached only after these standardized procedures are first followed by the DEC. DEC, therefore, was required to follow the UPA in granting Chaffee the variance.
Since the respondents have not submitted any proof that DEC complied with the notice requirements set forth in ECL 70-0109 (subd 2) when granting the variance, they have failed to rebut the allegations in the petition. Accordingly, this court holds that DEC acted without authority *647 when it granted Chaffee a variance before taking those steps mandated in the UPA.
Finally, this court must consider whether or not DEC acted in excess of its authority when it granted Chaffee a variance based upon an incomplete application. Although respondents Flacke and Spagnoli admit that Chaffee’s application for a variance did not comply with the requirements set forth in 6 NYCRR 360.1 (e) (2), they assert that the DEC had actual knowledge of those facts, which would have been contained within the application, if it had been correctly filled out by Chaffee. They argue that under the circumstances, DEC would have gained nothing by forcing Chaffee to comply with the regulation, and that, therefore, DEC should be deemed to have acted properly when it granted the variance.
This court cannot condone such an action. The public’s desire for increased governmental accountability and increased public involvement in decision making was among the reasons which prompted the Legislature to pass the UPA. Section 360.1 (e) (2) itself reflects such goals in that it states certain information must be contained within an application for a variance. DEC is the agency responsible for securing compliance with the regulations promulgated pursuant to the UPA. Thus, its agents act contrary to law when they excuse an applicant from having to meet a particular regulation’s terms just because they think the terms are either unnecessary or too cumbersome, redundant or complex.
Accordingly, this court holds that DEC acted without authority when it granted Chaffee a variance based upon an inadequate application.
In conclusion, this court orders that: (1) the permit to operate the Chaffee Landfill issued on November 8, 1981 and the variance to the permit issued November 31, 1981 are void and may not be reissued until such time as all the applicable laws, rules and regulations of the State of New York have been complied with, and (2) Chaffee Landfill is enjoined from receiving and disposing of the sludge from the Buffalo Sewer Authority until such time as a proper permit and variance is granted to Chaffee Landfill, Inc., in *648 full compliance of all the applicable laws, rules and regulations of the State of New York.

 The Legislature changed the effective date of article 8 from June 1, 1976 to September 1, 1976 (L 1976, ch 228, § 4).